RICHARD J. COLETTI vs. DEPARTMENT OF STATE POLICE.

No. 04-P-1529.

Suffolk. June 15, 2005. - August 8, 2005.

Present: BECK, McHUGH, & KAFKER, JJ.

*License. Due Process of Law,* Revocation of license. *State Police.*

The Department of State Police (department) properly revoked the plaintiff's private detective license pursuant to G. L. c. 147, § 25, based on conduct of the plaintiff prior to the issuance of the license that the department should have considered when the plaintiff first applied for the license, but which the department overlooked or ignored due to an incomplete review of the application, where good moral character was an essential, ongoing requirement of being licensed as a private detective; where the plaintiff's serious misconduct prior to the revocation was followed by a more recent misrepresentation; and where the statutorily required hearing and notice that was provided to the plaintiff was sufficient to satisfy any due process rights that might have arisen out of the license revocation. [224-227]

CIVIL ACTION commenced in the Superior Court Department on July 22, 2002.

The case was heard by *Paul E. Troy,* J., on a motion for judgment on the pleadings.

*James R. McMahon, III,* for the plaintiff.

*Christine A. Baily,* Assistant Attorney General, for the defendant.

KAFKER, J. The issue presented is whether the Department of State Police (department) properly revoked the private detective license of Richard Coletti pursuant to G. L. c. 147, § 25. As grounds for revocation, the department relied on conduct, occurring prior to the issuance of the license, that the department should have considered when Coletti first applied for the license, but which it overlooked or ignored due to an incomplete review of the application. We conclude that the department properly considered Coletti's prior conduct to satisfy the statutory

purpose of securing the integrity of licensed private detectives, and we therefore affirm the judgment of the Superior Court dismissing the complaint.

*Facts.* On April 23, 2001, Coletti submitted an application to the department for a private detective license. In response to questions on the application regarding employment dates, he listed that he had been employed by the town of Wareham (town) police department from May, 1984, to July, 1998. The application form did not request information regarding the reasons for the termination of employment.[1] A State trooper conducting the background investigation on Coletti's application for the department called the town police department, and a sergeant named in the application verified the dates of Coletti's employment.[2] On June 19, 2001, the department granted Coletti the private detective license.

On September 13, 2001, the town police chief sent the department a letter stating that he was "surprised" that Coletti had been awarded a private detective license because Coletti had been "terminated from his employment with this agency for forging a signature, conducting an unauthorized Board of Probation check, dishonesty, and for psychological problems. His License to Carry Firearms was suspended at the time of his termination."

After receiving the letter, the department conducted an evidentiary hearing at which Coletti, who was represented by counsel, testified. Substantial evidence was introduced to establish that Coletti had been terminated from his employment on July 28, 1998, by the town police department after the town determined that he had "forged" the signature of a police dispatcher (with whom he was having an affair) on a letter to a newspaper editor and that he had run an unauthorized criminal history systems board/board of probation check on the dispatcher as well. The town had also adopted the recommendation of a town police department psychologist that Coletti was

---

[1]The department does not contend that Coletti made any express misrepresentations on the private detective license application. It does, however, contend that he made such misrepresentations on a license to carry firearms application.

[2]Apparently that was the extent of the trooper's questioning of the sergeant.

unfit for duty. The Civil Service Commission decision upholding the town's termination of his employment was introduced in evidence at the license revocation hearing, as was the Superior Court decision affirming the commission's decision.[3]

At the hearing on the revocation of the private detective license, the department further established that on February 21, 2001, Coletti applied for a firearms license pursuant to G. L. c. 140, §§ 129B and 131. In response to question 14 on the license to carry firearms application, which asked, "Has any license to carry firearms, permit to possess firearms, or firearms identification card issued under the laws of any state or territory ever been suspended, revoked or denied?" Coletti answered, "No." His license to carry firearms had, however, been suspended on July 3, 1998. As the department's hearing officer found, "Mr. Coletti knew or should have have known that he should have answered 'yes' to question 14 . . . ."

Although all of this conduct occurred prior to the issuance of Coletti's private detective license, the department was either unaware of it or ignored it when it initially issued the license.[4] Based on the information presented at the revocation hearing, the department concluded on July 29, 2002, that Coletti did not satisfy the requirements of G. L. c. 147, § 24, and revoked his license.

Coletti appealed the department's decision to the Superior Court pursuant to G. L. c. 30A, § 14. Coletti filed a motion for judgment on the pleadings; the Superior Court denied Coletti's motion and entered judgment in favor of the department dismissing the complaint.

*Discussion.* An applicant for a private detective license must satisfy the requirements of G. L. c. 147, § 24, as amended through St. 1996, c. 151, § 338. The applicant "shall be of good moral character, and . . . shall have been regularly

---

[3]The notice of appeal of the Superior Court's decision was also introduced in evidence. We note that this court affirmed the Superior Court on June 20, 2003, in an unpublished memorandum and order. *Coletti* v. *Civil Serv. Commn.,* 58 Mass. App. Ct. 1106 (2003).

[4]Coletti testified that he informed the trooper conducting the investigation of the reasons for his termination. The trooper's supervisor denied that this had occurred. The department's hearing officer made no findings on this point.

employed for not less than three years as a detective doing investigating work, a former member of an investigative service of the United States, a former police officer, of a rank or grade higher than that of patrolman . . . or a police officer in good standing formerly employed for not less than ten years. . . ."[5]

The revocation of private detective licenses is governed by G. L. c. 147, § 25. Among other directives, § 25 provides, "No person convicted of a violation of section ninety-nine or ninety-nine A of chapter two hundred and seventy-two of the general laws[6] shall be granted a license and any license previously granted to such person shall be revoked."[7] Also, the failure to post the detective license as directed or comply with statutory requirements regarding the naming of the private detective business shall constitute cause for revocation of the license. Finally, the colonel of the State police "may at any time for cause, after notice and a hearing, revoke, any such license."

Coletti argues on appeal, as he argued below, that once a private detective license has been issued, cause for revocation of that license encompasses only (1) misrepresentations in the license application; (2) breach of the express conditions for holding a license, i.e., being convicted of a felony or violating G. L. c. 272, § 99 or § 99A; or (3) misconduct occurring subsequent to the issuance of the license. Other conduct that occurred prior to the issuance of the license, even if it justified or required denial of the license in the first place, does not, he contends, provide cause for revocation.

We do not read the department's powers of revocation to be so circumscribed. The statute provides that the license may be revoked "at any time for cause." G. L. c. 147, § 25. Furthermore, "[t]he specific causes for revocation [listed in the statute] . . . are not stated to be exclusive, and when we move beyond them . . . we discern a distinct legislative concern with the honesty of one engaged in the business of a private

---

[5]As we conclude that Coletti did not satisfy the "good moral character" requirement, we need not address whether he also failed to fulfil other requirements of G. L. c. 147, § 24.

[6]General Laws c. 272, § 99, addresses wiretapping offenses, and § 99A addresses secretly overhearing jury deliberations.

[7]General Laws c. 147, § 25, also provides that no one convicted of a felony in any State in the United States may be "granted" a license.

detective." *Bond* v. *Commissioner of Public Safety*, 1 Mass. App. Ct. 536, 540 (1973). We therefore conclude that good moral character is an essential, ongoing requirement of being licensed as a private detective. *Ibid.* See *In re Berardi*, 23 N.J. 485, 494 (1957) ("There are few fields of endeavor in which credibility is so essential a part of the work undertaken as that of private detective"). We also conclude that misconduct evidencing a lack of the required good moral character — even if it predates the license application — may provide cause for the discharge.

In *Alsabti* v. *Board of Registration in Medicine*, 404 Mass. 547 (1989), the Board of Registration in Medicine revoked a physician's license to practice medicine based on a series of plagiarized articles he prepared and published when he was a graduate student almost ten years before the license revocation. As a physician, Alsabti was "well regarded by his colleagues." Nevertheless, the board concluded "by his pattern of conduct in publishing a series of plagiarized articles, in disregard of the fundamental virtues of intellectual honesty, professional integrity and respect for the advancement of scientific knowledge, Alsabti has demonstrated that he lacks good moral character which is required to practice medicine." *Id.* at 550. The Supreme Judicial Court upheld this determination, emphasizing that his prior "serious" misconduct provided an adequate basis to revoke his license. Alsabti's prior misconduct meant that he had "a heavy burden to prove his present good character to the board." *Id.* at 554. In the instant case, the misconduct for which Coletti was terminated from employment was serious. Although it occurred four years before the license revocation, it was followed by a more recent misrepresentation on his application for a license to carry firearms. In these circumstances, *Alsabti* v. *Board of Registration in Medicine, supra,* provides strong support for upholding the decision of the department.

Coletti relies on *Derby Refining Co.* v. *Board of Aldermen of Chelsea*, 407 Mass. 718, 722 (1990) (*Derby*), for the proposition that the causes for revoking a license are narrower than the reasons for denying it in the first place, and also that once a license is issued, a "vested property right" with due process protection has been created. *Derby* involved a license for the

storage of flammable materials. In deciding whether to issue the license, the relevant governmental entities "may consider not only risk of fire and explosion," the core statutory concerns, "but also annoyance and inconvenience to others and the general good order and welfare." *Id.* at 721, quoting from *St. James Bldg. Corp.* v. *Commissioner of Pub. Safety*, 260 Mass. 548, 555 (1927). The court concluded that once the license issued, however, the phrase "for cause" as used in G. L. c. 148, § 13, "encompasses only grounds based on risk of fire or explosion, or on a licensee's breach of an express condition subsequent to the issuance of the license," and not the more open-ended criteria that may be considered in the original issuance. *Derby*, *supra* at 723.

As good moral character is an essential statutory concern here, analogous to the risk of fire and explosion in the flammable storage statute, we consider the analysis in *Derby*, *supra*, to be consistent with our decision in this case. Also, the same high standards for measuring good moral character "that control the granting of the application for the license apply with equal force in a proceeding for the revocation of the license 'for cause.' " *In re Berardi*, 23 N.J. at 491. Otherwise, the important statutory purpose of securing the integrity of licensed private detectives cannot be accomplished. And finally, the statutorily-required notice and hearing that was provided to Coletti was sufficient to satisfy any due process rights that might arise out of the revocation of the private detective license previously issued. See *Madera* v. *Secretary of the Executive Office of Communities & Dev.*, 418 Mass. 452, 462 (1984).

*Judgment affirmed.*